

**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

RUDY A. LOPEZ,

Debtor.

Case No.   SA 06-10420 TA

Chapter   13

**MEMORANDUM OF DECISION OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN**

Date: September 26, 2006
Time: 2:00 p.m.
Courtroom: 5B

The Trustee filed his objection to confirmation of the Debtor's Chapter 13 plan ("plan").  The sole basis for the objection was the Trustee's legal argument that the plan could not, after amendments under BAPCPA* and under pre-BAPCPA authority, appoint the Debtor as disbursing agent under the plan for current payments due under the Debtor's home mortgage.  The plan also provides that arrearages due on the mortgage, along with other claims, will be paid through the Trustee.  The matter was first heard August 22, 2006 but was continued to September 26, 2006 to allow both sides an opportunity to submit further briefs.  The Court issued tentative rulings before each of the hearings.  Those

---

* The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

1

tentative rulings are set forth below and are hereby adopted as the Court's conclusions of law and its statement of decision.

For the reasons stated, the Court OVERRULES the Trustee's objection and, by separate order, confirms the plan.

A. **Statement of Decision - August 22, 2006**

This is the Chapter 13 Trustee's ("the Trustee's") objection to confirmation of the Debtor's plan. The Trustee argues that changes to the law under BAPCPA have made even clearer that debtors cannot avoid paying the trustee's fee in Chapter 13 by paying claims directly, instead of through the trustee. The Trustee's position is, of course, contrary to well-established convention in the Central District and in many other districts, as confirmed in the case law. *Matter of Mendoza*, 111 F.3d 1264, 1269 (5th Cir. 1997); *In re Bettger*, 105 B.R. 607, 609 (Bankr. D. Or. 1989); *In re Burkhart*, 94 B.R. 724, 725 (Bankr. N.D. Fla. 1988). As counsel for the Debtors argues, it has been routine for at least the last twenty years that Debtors will pay their mortgages, and sometimes other claims, directly to the creditor, bypassing the trustee altogether. Indeed, the option is actually made a part of the standard Chapter 13 plan in the Central District.

The question is twofold: (1) whether the convention has always been incorrect and it has now fallen to this Court to correct the practice in order to conform to law and/or (2) whether or not the convention before was incorrect, changes in BAPCPA have now made it clear that provisions such as the provision in the plan at bar are unlawful and unconfirmable. The plan at bar provides that, except for arrearages already owed to the Class Two creditors (which are creditors secured by the Debtor's residence), all future mortgage payments will be made according to contract terms directly to the respective

2

creditors. Further, it is noted in the plan that the term of these loans is longer than the 36-month term of the plan.

The Trustee relies heavily upon a 9th Circuit case interpreting Chapter 12, *In re Fulkrod*, 126 B.R. 584 (9th Cir. BAP 1991), aff'd 973 F. 2d 801 (9th Cir. 1992). It is true as the Trustee argues that there are many acknowledged similarities between Chapters 12 and 13, and Chapter 12 was apparently patterned after Chapter 13. The *Fulkrod* court focused on the need to provide payment for Chapter 12 trustees as they play such a significant role in the administration of Chapter 12 cases. *Id.* at 802. The *Fulkrod* court found it incongruous and therefore not permitted that a Chapter 12 debtor should be able to direct payments to creditors impaired under a plan and bypass thereby the obligation to pay a fee to the trustee. The *Fulkrod* court noted that the effect of such diversion would be to impose some of the overall costs of the trustee program either on other cases or on the public purse. *Id.* at 803. The Circuit court in *Fulkrod* held that: "Chapter 12…does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. 586…." *Id.* at 803. In so doing, the Circuit court in *Fulkrod* (973 F.2d at 803) disregarded as dicta the opinion of the BAP panel that acknowledged that impaired claims could in some circumstances be paid directly under a plan "because the code contemplates flexibility." *Fulkrod*, 126 B.R. at 588. However, upon closer analysis, there is much about the *Fulkrod* opinion which causes this Court to question its strength as binding or even as persuasive precedent in this matter.

First, the provision which governs compensation for both Chapters 12 and 13 is found at 28 U.S.C. 586(e)(2), which provides that the percentage trustee fee is collected

3

from "all payments *received* by such individual under plans in the cases under chapter 12 or 13..." (emphasis added).  As was noted in *In re Wagner*, 36 F. 3d 723 (8th Cir. 1994), another case analyzing Chapter 12 fees by analogy to Chapter 13, the predecessor statute governing fees before the enactment of Chapter 12 was 11 U.S.C. 1302(e)**, which had provided that the trustee's fees should be collected "from all payments under the [Chapter 13] plan." 11 U.S.C. 1302(e)(1982). This provision had prompted many disputes about whether payments made directly by debtors were in fact "payments under the plan." *Id*. at 727, citing, *Foster v. Heitkamp (In re Foster)*, 670 F. 2d 478, 490-91 (5th Cir 1982). Although the original version of Chapter 12 had mirrored section 1302(e), it was "almost immediately replaced with 586(e)(2)....[which] in light of the frequency with which disputes over trustee's fees under Chapter 13 were litigated prior to 1986 [meant] the revision is significant." *Wagner*, 36 F. 3d at 727-728. The *Wagner* court concluded that the *Fulkrod* court had wrongly inferred that because Congress requires the trustees to be financed by a percentage fee rather than from taxpayer funds, Congress must have meant to make it impossible (or at least difficult) to avoid paying a trustee's fee in a case. However, the *Wagner* court felt that a more appropriate way to divine Congressional intent was by a careful reading of the statutory language actually used rather than interpretation of broad policy concerns. *Id*. at 726.

Moreover, there are other reasons not to rely quite so heavily upon *Fulkrod* for guidance here whether or not it was correctly decided.  It is rather clear that there are some circumstances where a debtor may make payments directly to a creditor, or

---

** All statutory citations are to Title 11, U.S. Code unless otherwise indicated.

"outside the plan." Section 1326(c) contemplates that the plan may "otherwise provide" for a claim, that is, other than by payment through a trustee. Further, 11 U.S.C. § 1322(b)(2) provides that a Chapter 13 plan may not "modify" a claim secured by the debtor's principal residence, and that payments on these claims typically go well beyond the term of the plan. "It would serve little purpose to require the Debtors to disburse their mortgage payments through the Trustee (and to pay the trustee's statutory commission thereon) during the Plan, only to have to arrange to make direct mortgage payments upon the termination of the Plan." *In re Aberegg*, 961 F. 2d 1307,1310 (7th Cir. 1992). Even the *Fulkrod* court confined its ruling to payment of a fee only on those claims "modified by a plan." *Fulkrod*, 973 F. 2d at 803. Since the Class Two mortgage claims at issue here are not and cannot be modified by the plan under section 1322(b)(2), *Fulkrod* simply does not apply even under its own terms.

Next we must discuss whether there is anything enacted under BAPCPA that would compel a shift toward requiring all payments to go through the Trustee. The Trustee argues that section 1326 was significantly amended, i.e., from "(a)(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan..." to now read "(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount -

(A) *proposed by the plan* **to the trustee**..." (emphasis added).

The Trustee reinforces his argument by noting that an exception is made under the amendment in new subsection (C) only for purchase money claims secured by personal property. The Trustee argues that the failure to except claims secured by real property

5

(or any other kinds of claims) should be read as significant and read as Congressional intent to force all other payments through the trustee.

The Court does not construe the addition of the words "to the trustee" quite so broadly as the Trustee urges. First, it is a rather slender basis upon which to contend that all of the well-established law and procedure of the last 25+ years should be swept aside in favor of an absolutist approach. More likely the new exception language in section 1326(a)(1)(C) represents a specific addition for the narrow interests of the auto finance lobby which requires direct payment of post-petition amounts to the creditor irrespective of what the plan might otherwise provide. Second, the Court notes that section 1326(c) remains unchanged. It still provides: "Except as otherwise provided *in the plan* or in the order confirming the plan, the trustee shall make payments to creditors under the plan." (emphasis added). Under the Trustee's view, the introductory language "except as otherwise provided..." would cease to have any meaning. The Trustee acknowledges at page 5 of his papers that the Court retains discretion to "otherwise provide" but the Trustee would ignore the language of the statute which clearly states that the plan may also "otherwise provide." An equally plausible reading of the new language of section 1326(a)(1)(A) is that those payments proposed by the plan to be made to the trustee must commence within thirty days of the petition, not that all payments to be made under a plan must go through the trustee. Two courts have considered the argument raised by the Trustee and both have rejected it; the fact that section 1326(c) remained unchanged was held by each as significant. *In re Clay*, 339 B.R. 784, 787-788 (Bankr. Utah 2006); *In re Vigil*, 334 B.R. 624, 629 (Bankr. N.M.2006).

In sum, the Court does not believe either that pre-BAPCPA convention was

incorrect because of the holding in *Fulkrod* , nor that it has been rendered unlawful by the BAPCPA amendments to section 1326(a)(1). The Court does retain discretion under both sections 1326(a)(1) and (c) to "order otherwise" but the Trustee has offered no compelling reason in this case to order that payments be made through the Trustee.

*Overrule objection.*

### B.   Statement of Decision After Further Briefing - September 26, 2006

This is a continued hearing on the Chapter 13 Trustee's objection to confirmation of the plan. The matter was continued to allow both sides the opportunity to further brief the issues. The following ruling incorporates by reference the earlier remarks found in the tentative opinion made before the August 22, 2006 hearing.

The Trustee argues that by reason of the BAPCPA amendments, notably section 1326(a)(1), debtors are no longer able to act as disbursing agents but instead ***all*** plan payments must be made through the trustee. For the reasons already stated, the Court is not persuaded that this is the case. Significantly, Congress did not change section 1326(c) which still provides: "***Except as otherwise provided in the plan*** or in the order confirming the plan, the trustee shall make payments to creditors under the plan." (Emphasis added). Unless the language emphasized from above has ceased to have any meaning, it must still be the case that under certain circumstances a plan can provide for payments to be made by the debtor as disbursing agent under the plan. Moreover, the courts that have considered this issue since the effective date of the BAPCPA amendments have uniformly concluded that the debtor's ability to make direct payments under a plan persists under BAPCPA, at least in some circumstances. *In re Clay*, 339

7

B.R. 784, 787-88 (Bankr.Utah 2006); *In re Vigil*, 344 B.R. 624, 629 (Bankr. N.M. 2006).

Even the Trustee's cited case, *In re Perez*, 339 B.R. 385, 408-09 (Bankr. S.D. Tex. 2006) specifically acknowledges that the power of the debtor to act as disbursing agent persists after BAPCPA. Indeed, the *Perez* court merely decided that its local rule [S.D. Rule 3015(b)] that required mortgage payments to all go through the chapter 13 trustees was appropriate for policy reasons [*Id.* at 415-16] and that it did not amount to an impermissible modification of the rights of secured creditors. *Id.* at 402. The *Perez* court made it clear that henceforth payments on mortgages directly by debtors would be the exception, not the rule in Chapter 13. *Id.* at 417. However, it has never been seriously disputed that the Court in all cases reserves the power to "order otherwise" despite what the plan may provide regarding disbursing agents. 11 U.S.C. 1326(a)(1). Moreover, the right to make payments directly is a privilege, not a right. *See, In re Slaughter*, 188 B.R. 29, 31 (Bankr. N.D. 1995); *In re King*, 116 B.R. 413, 414 (D. N.J. 1990). Courts have developed a number of factors to consider when reviewing a debtor's request to act as disbursing agent under a plan. *Perez,* 339 B.R. at 409. However, insofar as the Trustee argues that *Perez* stands for anything other than that the Court has the *discretion* to deny confirmation of such a plan, the argument fails.

The Trustee also cites the Chapter 12 case, *In re Fulkrod*, 126 B.R. 584 (9th Cir 1991), *aff'd* 973 F. 2d 801 (9th Cir. 1992) for the proposition that plans should not be confirmed that provide for direct payment by debtors because this would impermissibly undercut the fee structure of Chapter 12 [and, by logical extension, Chapter 13]. For the reasons already articulated, however, the Court is not persuaded that *Fulkrod* can be read this far. Indeed, the Court previously noted that even *Fulkrod* specifically confines

8

its ruling to plans providing "payments directly to creditors with *claims modified* by a plan of reorganization ..." (emphasis added). *Id.* at 803. In response, the Trustee has argued that, indeed, mortgages with payments in arrears that are paid under the plan *are modified,* in that such a plan modifies the mortgagee's right to accelerate and foreclose on account of the arrearage. See, *Rake v. Wade*, 508 U.S. 464, 473 n. 9, 113 S. Ct. 2187, 2193 n. 9 (1993). However, the Trustee overlooks the fact that mortgages secured by the debtor's residence are in a special statutory category in Chapter 13. Section 1322(b)(2) provides that a plan may modify the rights of secured creditors "other than a claim secured only by a security interest in real property that is the debtor's principal residence.." and that subsection (5) further provides "notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time...on any...secured claim on which the last payment is due after the date on which the final payment under the plan is due..." The *Perez* court acknowledged that this language, in substance, meant that there was a kind of "permissible modification," or a modification allowed notwithstanding the general prohibition, in respect of home mortgages for arrearages. *Perez*, 339 B.R. at 404. Significantly, the *Perez* court did <u>not</u> count such a curing of arrearages on home mortgages when determining "whether the debtor's proposed plan modifies debt" which courts consider among many factors when deciding whether the plan can provide that the debtor should act as disbursing agent. *Id.* at 409, n. 25. Other courts have distinguished *Fulkrod* on the grounds that curing of arrearages does not amount to a "modification" of the claim by analogy to the Chapter 11 cases that hold that plans that reinstate and cure arrearages on secured claims do not thereby "impair" such claims. *In re Barocio*, 2003 Bankr. LEXIS 2032, n. 8 (Bankr. D.

9

Alaska 2003), citing, In re Entz-White Lumber & Supply, Inc, 850 F. 2d 1338, 1341 (9th Cir. 1988). Other cases have simply held that Chapter 13 plans that cure arrearages on home mortgages do not thereby "modify" the secured claims. Downey Savings and Loan Ass'n v. Metz (In re Metz,) 820 F. 2d 1495, 1497 (9th Cir. 1987).

Moreover, in In re Clay, supra, that court analyzed the cases such as In re Case, 11 B.R. 843, 846-47 (Bankr. D. Utah 1981) and In re Alberegg, 961 F. 2d 1307 (7th Cir. 1992) which pre-BAPCPA had generally permitted plans to utilize the debtor as disbursing agent on secured claims where the debtor was not seeking to "modify" the debt under the plan. Clay, 339 B.R. at 786. Clay was a case, like the one at bar, where the plan provided for curing of arrearages on a home mortgage through the trustee [Id. at 785], yet the Clay court apparently concluded that such treatment did not mean that the plan was "modifying" the secured claim in any sense that would have prevented the appointment of the debtor as disbursing agent on the regular mortgage payments not in arrears. Id. at 786

Further, we must remember that Fulkrod was a Chapter 12 case. The prohibition of the modification of home mortgages found at section 1322(b)(2) **is not found in the analogue section, 1222(b)(2),** and so there is no corresponding exception in section 1222(b)(5) introduced by the word "notwithstanding" as found in section 1322(b)(5). Therefore, the Court understands there to be a special exception for the curing of home mortgage arrearages which, when contained in a Chapter 13 plan, may indeed mean the plan "modifies" the secured claim <u>but</u> in a permissible way specifically acknowledged in the statute. Rake, 508 U.S. at 473 n. 9, 113 S.Ct. at 2193 n. 9; Perez, 339 B.R. at 404. Since there is no corresponding analogue in Chapter 12, curing of a home mortgage

10

Case 8:06-bk-10420-TA    Doc 31    Filed 10/03/06    Entered 10/04/06 11:15:26    Desc
Main Document    Page 11 of 13

cannot have been the kind of "modification" of claim that the *Fulkrod* court was speaking of in its opinion. For this reason, among others already discussed, this Court does not find *Fulkrod* persuasive authority for the Trustee's case.

Lastly, the Trustee cites *In re Glasper*, 28 B.R. 6 (9th Cir. BAP 1983) as supposed authority for the proposition that a Chapter 13 plan may not permit the debtor to act as disbursing agent on a mortgage while curing the arrearages through the plan. The Court does not agree. *Glasper* merely holds that a Plan cannot **omit to provide** for current payments at all on a mortgage where the arrearages on same are cured in the plan. In other words, to "provide" for a claim under sections 1322(b)(5) and 1325, **all** treatment of the mortgage, both current and arrearages, must be identified under the plan. *Id.* at 7-8. The *Glasper* court specifically declined to take up the issue of debtor disbursement of the payments [as discussed in *Matter of Foster*, 670 F. 2d 478 (5th Cir.1982) and similar authority], as not before them. *Glasper*, 28 B.R. at 7-8. The concurring opinion in *Glasper*, however, goes further and clears up some of the confusion over what is "provided for" by a plan compared to what is "outside" the plan. Judge Hughes in his concurring opinion specifically rejected the argument that payments could only be made by and through the trustee but rather explains that a plan can "provide" for a claim even if it is the debtor that is designated as the disbursing agent, and such a plan can be confirmed. *Glasper*, 28 B.R. at 9, *citing*, *In Matter of Foster*, 670 F. 2d at 487. The plan in the case at bar is not like the one in *Glasper* in that it specifically provides for treatment of the current portions of the home mortgage under Class Two.

In sum, the Court does not believe that anything under BAPCPA has changed the preexisting law. Preexisting law had permitted the debtor to designate himself as

11

disbursing agent on current mortgage payments even where arrearages are paid through the Trustee. *Fulkrod* was decided under Chapter 12 which, unlike Chapter 13, contains neither the prohibition of modification of claims secured by the debtor's residence nor the specific exception to this prohibition for curing of arrearages. Therefore, *Fulkrod*'s broad pronouncement that "modified" claims can only be paid through the trustee is of dubious applicability in Chapter 13, particularly in this context. While it is true that designation of the debtor as disbursing agent is addressed to the Court's discretion, and must be viewed as a privilege and not a right, the Trustee here has given no particular reason why this debtor cannot serve as disbursing agent for the current portions of his mortgage.

*Overrule objection.*

DATED: OCT - 3 2006

HONORABLE THEODOR C. ALBERT
United States Bankruptcy Judge

NOTICE OF ENTRY OF JUDGMENT OR ORDER

AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

You are hereby notified that a judgment or order entitled Memorandum of Decision Overruling Chapter 13 Trustee's Objection to Confirmation of Plan: was entered on OCT 4 2006.

I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on OCT 4 2006.

Bruce David White
White & Roseman
1201 Dove Street, Suite 480
Newport Beach, CA 92660

Amrane Cohen
Chapter 13 Trustee
770 The City Drive South
Suite 3300
Orange, CA 92868

DATED OCT 4 2006

By _____
Clerk